**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 06 CR 784** |
| | ) | |
| **VERONICA LOPEZ VEGA** | ) | |
| **a/k/a Maria Miranda** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

A grand jury returned a four count indictment against Veronica Lopez Vega, charging her

with committing perjury while testifying as a defendant in a criminal trial in July 2003, in

violation of 16 U.S.C. § 1623(a); falsely representing a number to be her Social Security number

in connection with her employment in June 2002, in violation of 42 U.S.C. § 408(a)(7)(B); being

found in the United States in July 2003 without obtaining permission for entry after having been

deported, in violation of 8 U.S.C. § 1326(a) and 6 U.S.C. § 202(4); and using someone else's

means of identification in September 2002 with intent to violate federal law, in violation of 18

U.S.C. § 1028(a)(7). The defendant[1] has moved to dismiss the indictment on the ground that it

was obtained in violation of her right to due process of law. For the reasons stated below, the

Court denies the defendant's motion.

**Background**

The defendant was first indicted in 2002, under the name Maria Miranda, along with

---

[1] The Court will refer to Ms. Lopez Vega as "the defendant" for purposes of simplicity, due to the fact that she has been charged under two different names in the two cases that have been brought against her in this district.

other defendants. *United States v. Carrillo, et al.,* Case No. 02 CR 729. That indictment charged

her with conspiring to possess heroin and cocaine with intent to distribute, importing heroin,

possessing heroin with intent to distribute, and retaliating against an informant. The charges

arose from a trip that the defendant made from Mexico to Chicago in a Cadillac automobile that

was later found to contain drug paraphernalia and a missing drive shaft. At trial before Judge

David Coar, an alleged co-conspirator who had been granted immunity testified that the

defendant had been paid $10,000 to drive the car to Chicago with heroin and cocaine concealed

in the drive shaft.

The defendant testified in her own defense in the *Carrillo* case and stated, among other

things, that her name was Maria Miranda and that she was a United States citizen. She further

testified that she had been invited by a co-defendant to attend a party and to receive a car as a gift

and that she was unaware that there were narcotics in the car. At trial, the government tendered

documents to the defense indicating that the defendant had previously used the name Veronica

Lopez Vega. During her testimony, the defendant explained this by stating that once when she

tried to enter the United States, she used the name Veronica Vega because she was a minor and

was afraid that the father of her child, who was traveling with her, could get into trouble. She

testified that she had never used the name Veronica Vega at any other time.

In July 2003, a jury convicted the defendant on the narcotics charges but acquitted her on

the retaliation charge. At sentencing, held on March 19, 2004, Judge Coar found that the

defendant had testified falsely in denying knowledge of the narcotics in the car and in denying

certain conversations with co-conspirators, and he imposed a two-level enhancement for

obstruction of justice under the Sentencing Guidelines. Judge Coar agreed with the defense,

however, on several other contested Sentencing Guidelines issues, including the defendant's role in the offense, the amount of drugs for which she was accountable, and a proposed enhancement for restraint of a victim. Judge Coar imposed the mandatory minimum sentence, 120 months imprisonment, rather than the much higher sentence that the prosecutor sought. For reasons that are unclear but that presumably involved clerical delay, the judgment against the defendant in the previous case was not entered on the docket until June 17, 2004.

The defendant filed a notice of appeal on June 22, 2004. On July 12, 2004, the defendant filed a motion for new trial based on newly discovered evidence, pursuant to Federal Rule of Criminal Procedure 33(b). The allegedly newly discovered evidence consisted primarily of the report of a psychologist who examined the defendant in preparation for sentencing and concluded that she had cognitive limitations, information that the defendant argued could have impacted the jury's determination that she had acted knowingly. Judge Coar denied the motion on July 20, 2004, without prejudice to renewal after conclusion of the defendant's appeal. The Seventh Circuit heard oral argument on the defendant's appeal on June 10, 2005.

On November 15, 2005, while the parties were awaiting a decision on the appeal, Barry Miller, the prosecutor who had tried the defendant's case, contacted defense counsel Alison Siegler. Miller advised Siegler that the government was considering seeking charges against the defendant for perjury and identity theft but that it would forego doing so if the defendant would dismiss her appeal. On November 17, 2005, Siegler advised Miller by letter that the defendant would not dismiss her appeal and that if the government proceeded to seek additional charges, the defendant would challenge any new charges as being the product of vindictive prosecution. On November 21, 2005, David Glockner, the chief of the criminal division of this district's

United States Attorney's Office, replied to Siegler letter with a letter of his own. Glockner stated that following the trial before Judge Coar, the government had received a complaint from someone named Maria Miranda who claimed that the defendant had stolen her identity and that additional investigation had led the government to believe that the defendant stole Miranda's identity, illegally re-entered the United States after deportation, and committed perjury when she testified that her name was Maria Miranda and that she was a United States citizen. Glockner stated that the government's proposal not to bring additional charges in exchange for an appellate waiver constituted normal plea bargaining and was not in any way improper, and he challenged Siegler's contention that further prosecution would be vindictive. Glockner repeated the earlier offer to decline the new charges in exchange for an appellate waiver. The defendant, however, did not withdraw her appeal.

On January 27, 2006, the Seventh Circuit affirmed the defendant's conviction. On March 8, 2006, the defendant renewed before Judge Coar her motion for a new trial. On May 23, 2006, over the government's objection, Judge Coar set the motion for an evidentiary hearing, initially setting the hearing date for September 14, 2006. On September 11, 2006, Judge Coar continued the hearing date to November 2, 2006.

On October 24, 2006, a grand jury returned the indictment in the present case. As indicated earlier, the indictment included four charges: perjury, false representation of a social security number, illegal re-entry following deportation, and use of another person's identification.

On October 27, 2006, Judge Coar again continued the hearing date on the defendant's motion for new trial in the first case. The hearing ultimately was held on April 18, 2007, and the

parties filed post-hearing briefs on June 5, 2007.  Judge Coar currently has the matter under advisement.

## Discussion

The defendant contends that the government obtained the present charges against her in retaliation for exercising her right to appeal the judgment in her first case.  The Due Process Clause "prohibits initiating a prosecution based *solely* on vindictiveness" for the defendant's exercise of a legal or constitutional right.  *United States v. Segal,* ___ F.3d ___, 2007 WL 2200507, at *4 (7th Cir. Aug. 2, 2007) (emphasis in original).  "[F]or an agent of the [United States] to pursue a course of action whose objective is to penalize a person's reliance on his legal rights" is "a due process violation of the most basic sort . . . ."  *Bordenkircher v. Hayes,* 434 U.S. 357, 363 (1978).

The defendant does not contend in her motion or supporting memoranda that she can establish that the prosecutor actually had a vindictive motive.  Instead, she argues that given the circumstances, vindictiveness should be presumed, and that the government cannot rebut the presumption.

The Court begins by reviewing certain highlights of the Supreme Court's vindictive prosecution jurisprudence.  In *North Carolina v. Pearce,* 395 U.S. 711 (1969), the Court considered a case in which the defendant was convicted of assault with intent to commit rape.  His conviction ultimately was overturned on state collateral review.  He was retried, again convicted, and sentenced to what amounted to a longer total prison sentence.  The Supreme Court ruled that after a criminal conviction has been set aside and the defendant has been again convicted, the Constitution's Due Process Clause prohibits the sentencing judge from imposing a

heavier punishment upon the defendant for having asserted his legal rights via appeal. *Id.* at 724.

The Court stated that

> [d]ue process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of his right to appeal or collaterally attack his first conviction, due process also requires that defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

*Id.* at 725. To assure the absence of such a motivation, the Court held, when a judge imposes a more severe sentence upon a defendant after a new trial, "the reasons for his doing so must affirmatively appear" and must be "based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Id.* at 726. In substance, the Court presumed vindictiveness and imposed upon the sentencing judge the burden of showing particularized circumstances reflecting a basis for an increased sentence other than retaliation for the defendant's attack on his original conviction.

In *Blackledge v. Perry,* 417 U.S. 21 (1974), the Court applied the due process guarantee against improper vindictive prosecution in a different procedural context. The defendant was convicted of misdemeanor assault in the state's district court and thereafter filed a notice of appeal. Under state law, the filing of the appeal nullified the original conviction and entitled the defendant to a trial *de novo* in the state's superior court. A prosecutor then obtained an indictment charging the defendant with felony assault based on the same conduct for which he had been charged with a misdemeanor. The defendant argued that the filing of the felony charge violated his right to due process. After reviewing *Pearce* and its progeny, the Court stated that "[t]he lesson that emerges . . . is that the Due Process Clause is not offended by all possibilities

of increased punishment upon retrial afer appeal, but only by those that pose a realistic likelihood

of 'vindictiveness.'" *Id.* at 27. It held that such circumstances existed in *Blackledge*.

Specifically, the Court noted, the prosecutor's interest in avoiding expenditure of additional

resources gave him a "considerable stake" in discouraging convicted misdemeanants from

appealing and thus obtaining a trial *de novo*, and he had the means to discourage all but "the most

hardy defendants" from obtaining a trial *de novo* by "'upping the ante' through a felony

indictment." *Id.* at 28. Given the inherent potential for vindictiveness, the defendant did not

have to prove an actual retaliatory motive to establish a due process violation. *Id.* In a footnote,

the Court stated that "[t]his would clearly be a different case if the State had shown that it was

impossible to proceed on the more serious charge at the outset." It cited a case in which a

defendant convicted of battery was later retried for homicide after the victim died, stating that it

"would not have been possible" to indict him for homicide at the time of the original charge.

*Id.* at 29 n.7 (citing *Diaz v. United States,* 223 U.S. 442 (1912)).

In *Bordenkircher,* the defendant was charged with forgery, which carried a maximum

sentence of ten years imprisonment. After arraignment, the prosecutor and defense counsel

discussed a possible plea agreement in which the prosecutor would recommend a five year prison

sentence. The prosecutor advised that if the defendant chose to go to trial, the prosecutor would

seek a charge under the state's habitual criminal statute, which would subject the defendant to a

mandatory life sentence. The defendant declined to plead guilty; the prosecutor obtained the

habitual criminal charge; and the defendant was convicted and sentenced to a life term. The

Supreme Court reversed the grant of a writ of habeas corpus. It began by noting that the

prosecutor's intention to seek further charges was "clearly expressed at the outset of the plea

negotiations," in other words, before the defendant chose to plead not guilty. For this reason, the Court stated, the case was different from one in which the prosecutor brought an additional charge without prior notice only after the defendant insisted on pleading not guilty. It stated that "[a]s a practical matter . . . , this case would be no different if the grand jury had indicted Hayes as a recidivist from the outset, and the prosecutor had offered to drop that charge as part of the plea bargain." *Bordenkircher,* 434 U.S. at 361.

The Court stated that the due process violation in cases like *Pearce* and *Blackledge* "lay not in the possibility that a defendant might be deterred from the exercise of a legal right, but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction." *Id.* at 363 (citations omitted). Though "[t]o punish a person because he had done what the law plainly allow him to do is a due process violation of the most basic sort," the Court stated, "in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Id.* The Court held that the prosecutor's conduct, "which no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution," did not violate the defendant's due process rights. *Id.* at 365.

In *United States v. Goodwin,* 457 U.S. 368 (1982), the defendant was stopped by the police for speeding while driving. The police officer asked the defendant to raise an armrest so that the officer could examine a plastic bag he had seen, but the defendant drove away at a high speed, striking the officer. The defendant was initially charged with several misdemeanors, including assault. He requested a trial by jury, as was his right. The prosecutor then obtained an indictment including a felony charge arising from the same incident. A jury convicted the

defendant on the felony charge and one misdemeanor charge. The trial judge denied the defendant's motion to set aside the felony conviction on the ground of prosecutorial vindictiveness. The appellate court reversed, concluding that because the circumstances gave rise to a genuine risk of retaliation, a presumption of vindictiveness applied, and the prosecutor had failed to show that the increased charges could not have been brought before the defendant exercised his right to a jury trial.

The Supreme Court reversed the court of appeals' decision. It began by reaffirming that a defendant "certainly may not be punished for exercising a protected statutory or constitutional right." *Id.* at 372. The Court distinguished, however, between the motivation to punish a defendant for violating the law and a "vindictive" motivation to punish him for exercising a protected rights. It stated that because the imposition of punishment is "the very purpose of virtually all criminal proceedings," the presence of a motivation to punish the defendant does not, by itself, provide an adequate basis for distinguishing justified from unjustified prosecutorial conduct. *Id.* at 372-73. Because motives are "complex and difficult to prove," in some cases an improper vindictive motive is presumed – though because of the severe effect of such a presumption, it is reserved for "cases in which a reasonable likelihood of vindictiveness exists." *Id.* at 373. The Court acknowledged that a presumption of vindictiveness had been applied in *Pearce* and *Blackledge* but stated that those decisions "reflect a recognition by the Court of the institutional bias inherent in the judicial system against the retrial of issues that have already been decided," which "might also subconsciously motivate a vindictive prosecutorial or judicial response to a defendant's exercise of his right to obtain a retrial of a decided question." *Id.* at 376, 377.

The Court declined to impose a presumption of vindictiveness in *Goodwin,* stating that "the timing of the prosecution's action . . . suggests that a presumption of vindictiveness is not warranted." *Id.* at 381. The Court also made it clear that prosecutors should remain free, before trial, to exercise their discretion to determine the extent of society's interest in prosecution. *Id.* at 382. An initial indictment, the Court stated, "does not necessarily define the extent of the legitimate interest in prosecution." *Id.* at 380; *see also id.* at 382 ("[a]n initial decision should not freeze future conduct"). "[J]ust as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." *Id.* The Court acknowledged that an "opportunity for vindictiveness" existed but stated that "a mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule." *Id.* at 384. The Court did, however, leave it open to a defendant, in a *Goodwin*-type situation, to attempt to prove the existence of an actual improper vindictive motivation for adding new charges. *Id.*

This Court derives several general principles from the Supreme Court's vindictive prosecution cases. A defendant may not be punished for exercising the right to appeal his conviction. In some situations, the presence of a retaliatory or vindictive motivation is presumed. The fact that the circumstances present an *opportunity* for vindictiveness is insufficient to call for a presumption of vindictiveness; rather, such a presumption is appropriate only in circumstances that pose a *reasonable likelihood* of vindictiveness. Such circumstances exist when a defendant succeeds in overturning his conviction and, on remand, the prosecution obtains an enhanced charge or the sentencing judge imposes a greater sentence. By contrast, the basis for a

presumption does not exist when the prosecutor is claimed to have retaliated against a defendant

before trial by obtaining additional charges after a defendant exercises a pretrial procedural right.

These general principles inform the Court's inquiry in the present case, but they do not provide a

readily apparent answer.  The search for that answer requires closer examination of the situation

at hand and comparison to the scenarios in which a presumption of vindictiveness has been held

to apply.

The defendant argues that this case is like *Blackledge* because it involves the institution

of new charges, for prior conduct, following the filing of an appeal.  Accordingly, the defendant

contends, the return of the new charges should be presumed to have been vindictive.[2]  Two

factors, however, differentiate this case from *Blackledge*.

First, *Blackledge* (like *Pearce* before it) involved a defendant's *successful* appeal, in that

the defendant actually obtained a new trial before the allegedly vindictive prosecutorial reaction.

In the present case, by contrast, the defendant's appeal was still pending when the prosecution

first mentioned the possibility of new charges, and the appeal had been turned down before the

new charges were actually returned.

A recent Seventh Circuit case suggests, albeit in *dictum,* that this difference is critical.

About two weeks ago, the Seventh Circuit stated that a burden-shifting presumption of

---

[2]  The Court notes that the defendant relies on *United States v. Andrews,* 633 F.2d 449
(6th Cir. 1980), for the proposition that when a prosecutor adds on charges after the defendant
exercises a procedural right, a presumption of vindictiveness arises.  *Andrews,* however, no
longer represents good law.  The court in that case imposed a presumption of vindictiveness
based on the prosecution's decision to return an enhanced charge after the defendants appealed to
a district judge a magistrate judge's decision to deny bail.  *Goodwin* makes it clear that the
addition of charges prior to trial following the defendant's exercise of a procedural right does not
give rise to a presumption of vindictiveness.

vindictiveness has been applied "[a]fter a trial [ ] in very limited circumstances . . . where prosecutors have pursued enhanced charges after a defendant *successfully* challenged a conviction and was awarded a new trial." *Segal,* 2007 WL 2200507, at *4 (emphasis added).

Though *Blackledge* certainly involved a defendant's exercise of his appellate rights in a way that succeeded in getting him a new trial, this Court questions whether a defendant's ultimate success on appeal is required to trigger imposition of a presumption of vindictiveness. In *Blackledge,* the Supreme Court reemphasized its statement in *Pearce* that its concern was that "'the fear of . . . vindictiveness may unconstitutionally deter a defendant's exercise of his right to appeal or collaterally attack his first conviction.'" *Blackledge,* 417 U.S. at 28 (quoting *Pearce,* 395 U.S. at 725). The deterrent effect that was of concern to the Supreme Court in *Blackledge* (but that, in fairness, was to some extent disavowed in *Bordenkircher*) does not depend on whether the defendant considering whether to file an appeal ultimately obtains a new trial. For this reason, the Court does not find this particular distinction, by itself, to be outcome determinative.

The second difference between this case and *Blackledge* is more meaningful. Unlike in *Blackledge,* this case does not involve the prosecutor obtaining new or greater charges based on the same conduct for which the defendant was previously charged or tried. Rather, the new charges against the defendant are based on conduct different from that for which the defendant was originally charged and convicted that came to the government's attention after the original charges were filed. The common and, in this Court's view, critical factor in *Blackledge* and *Pearce* that made it appropriate to impose a presumption of vindictiveness was that the government actor (in *Pearce,* the sentencing judge; in *Blackledge,* the prosecutor) chose to treat

the same conduct in a different way with only one significant intervening fact, namely the defendant's exercise of a constitutional or statutory right. Given those circumstances along with the obvious difficulty of proving motive, it made sense to presume that the increased charge or sentence was the result of the single significant intervening factor and thus to shift to the government the burden of proving otherwise.

The present case is different. Unlike in *Blackledge,* this is not a situation in which the prosecution, at the time of the first indictment, had a range of possible charges available but held some back, only to pursue them after the defendant filed an appeal. Rather, it is beyond question that the government could not have charged the defendant with perjury until after the *Carrillo* trial. In addition, based on the materials before the Court, the investigation that resulted in the current charges began as a result of matters that came to the prosecutor's attention after the defendant's testimony at the *Carrillo* trial. In other words, unlike in *Blackledge* and *Pearce,* there were significant intervening facts beyond the defendant's exercise of a protected right. Those circumstances do not, in the Court's view, pose a reasonable likelihood of vindictiveness, and as a result, there is no basis to impose a presumption of vindictiveness.

The defendant argues that the government could have indicted her for perjury before she appealed and that because it waited until after the appeal to do so, vindictiveness is the likely motive and should be presumed. The Court disagrees, both on practical and policy grounds.

First, the defendant's argument is inconsistent with the practical reality of when and how prosecutors seek grand jury indictments. The prosecutor may have suspected the defendant of lying about her name and citizenship at some point prior to her filing of the appeal. Suspicion, however, is one thing; the ability to prove a crime beyond a reasonable doubt is something else

13

altogether.  A prosecutor does not need to prove his case beyond a reasonable doubt to get an indictment, but prudent and competent prosecutors rarely commit prosecutorial resources to the seeking of charges unless they have good reason to believe that they can prove the case at trial and conclude that the case is worth pursuing.  At the time of the defendant's sentencing in the first case, the prosecutor had the defendant's trial testimony that her name was really Maria Miranda, as well as evidence that she had used the name Veronica Vega at an earlier point in time, along with the explanation that the defendant for that at trial.  There is no basis in the record to find that this gave the prosecution, prior to the sentencing or the filing of an appeal, what it needed to make the decision to commit the prosecutorial resources required to obtain and pursue a perjury charge.  Rather, the record before the Court indicates that information that enabled the prosecutor to make that decision and seek the perjury charge came to his attention well after the *Carrillo* trial.

Second, imposition of a presumption of vindictiveness in the present scenario would lead to significant negative consequences.  As a practical matter, the existence of the presumption would require a prosecutor who thinks that a defendant has lied under oath at trial to rush to the grand jury to seek charges between trial and sentencing, out of concern that he would effectively forfeit the ability to do so later (waiting until after sentencing would be exceedingly imprudent, as the defendant could immediately file a notice of appeal and thereby cut off the prosecutor's ability to act).  Though the interval between trial and appeal in federal court can be lengthy, and was lengthy in the defendant's first case, courts do not establish rules that apply for one case, one district, or one court system only; rather, they rely on rules of general application.  In many state courts and some federal courts, the interval between trial and sentencing is quite brief.  A rule

14

that would require prosecutors to act precipitously or in the heat of the moment rather than taking the time to consider the pros and cons (which might include, for example, whether the sentencing judge took the defendant's alleged perjury into account at sentencing) would be harmful to prospective defendants and to the system of justice. And when the prosecutor could not act with the necessary dispatch, he would forfeit of the ability to bring a charge for serious criminal conduct that amounts to a "flagrant affront to the basic concepts of judicial proceedings" and for which "[e]ffective restraints . . . are imperative." *United States v. Mandujano,* 425 U.S. 564, 576 (1976). Finally, many defendants faced with new, trial-based perjury charges filed prior to sentencing no doubt would contend – perhaps with some justification – that the prosecutor had acted in an untoward effort to increase the heat on the judge to impose a more severe sentence.

The defendant points out that the three charges other than the perjury charge all are based on alleged conduct that predated the trial in the *Carrillo* case, not to mention her filing of the appeal. She argues, in substance, that the prosecutor could have connected the dots and charged her much earlier for these alleged offenses. But the fact that there might have been information available that, if pursued, could have permitted charges to be filed sooner is of no significant consequence in the vindictiveness inquiry. To be more specific, nothing in the Supreme Court's vindictive prosecution jurisprudence suggests that it is appropriate to impose a presumption of vindictiveness based upon a prosecutor's failure to exercise due diligence in pursuing new charges prior to the defendant's exercise of a constitutional or statutory right.

In any event, there is no indication in the record that the prosecution actually had, prior to the *Carrillo* trial, the information that enabled it to seek the new charges. Rather, the record reflects that important information the prosecution needed to enable it to pursue the new charges

15

was provided to or gathered by the prosecution after the *Carrillo* trial. In addition to the matters cited in Glockner's letter, there is no indication that the prosecutor believed, at the time of the *Carrillo* trial, that the defendant's actual name was Veronica Lopez Vega and that Maria Miranda was an alias. The clearest indication of this is the fact that in the *Carrillo* case, the defendant was indicted, tried, and convicted as "Maria Miranda," without any hint that the prosecution saw that as an alias.

For these reasons, the Court concludes that no presumption of vindictiveness should be applied in this case. Though this situation certainly presents a potential risk of vindictive prosecution, "a mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule" such as would exist were a presumption of vindictiveness to be applied. *Goodwin,* 457 U.S. at 384. The present situation, which involves new charges based on conduct different from that for which the defendant was originally tried and convicted and that was the subject of her appeal, does not create the type of inherent potential for vindictiveness that led the Court, in *Blackledge,* to impose a presumption of vindictiveness. Again, the record in this case does not suggest that the government had the information it needed to decide to seek the new charges but deferred doing so until after the defendant had filed a notice of appeal.

Even were a presumption of vindictiveness to be applied, the prosecution has adequately rebutted it. When the Court described in its *dictum* in *Blackledge* what might rebut the presumption imposed in that case, it referred to whether the prosecution could have proceeded on enhanced charges "at the outset" or "originally," i.e., at the time the original charges were returned. *See Blackledge,* 417 U.S. at 29 n.7. In this case, the defendant has made no argument that the prosecution could have obtained any of the current charges at the time the grand jury

16

returned the *Carrillo* indictment.

Even if that fact is insufficient by itself to rebut a presumption of vindictiveness, the Court believes that prosecution has made the necessary showing. The first question is what exactly is needed to rebut the presumption if one is applied. In a case cited by the defendant, the Seventh Circuit read *Blackledge* as standing for the proposition that "objective evidence demonstrating that the new charges could not have been brought before the defendant exercised his constitutional rights" is sufficient to rebut a presumption of vindictiveness. *United States v. York,* 933 F.2d 1343, 1364 (7th Cir. 1991), *overruled on other grounds, Wilson v. Williams,* 182 F.3d 562, 567 (7th Cir. 1999).

The defendant reads *Blackledge* as imposing what amounts to an irrebuttable presumption, as she effectively seeks a showing that earlier prosecution was impossible if due diligence had been exercised. The Court does not believe that the standard for rebutting the presumption is that high. In *York,* the court applied the standard in a practical way, not in the rigid manner that the defendant urges. The defendant was indicted and convicted on charges of arson and mail fraud based on allegations that he committed arson on a business he owned and defrauded an insurance company in making a claim. Just before trial, York's son declined to testify against him, claiming his privilege against self-incrimination. York made arguably threatening statements to his son in the courtroom and allegedly threatened him again after a court session. York's conviction was reversed on appeal on unrelated grounds, and the case was remanded for a new trial. Before the retrial, the government obtained a superseding indictment that added a charge of obstruction of justice based on York's alleged threats to his son. After the second trial, York was convicted on all charges.

17

On appeal, York argued that the obstruction conviction should be overturned on the ground that the charge had been added in retaliation for his successful appeal. The court rejected the government's argument that it could not have obtained information from York's son about the threats sooner because he had claimed the privilege, noting that he had invoked the privilege before the threats, the government had never sought to question him about the threats, and there was nothing to suggest that he was unwilling to testify about them. The court ruled, however, that York's son was "effectively unavailable to the government" until after the first trial. It noted that at the second trial, the son testified that before the first trial, York pressured him to lie on the witness stand; he said he had claimed the privilege to avoid committing perjury as well as his father's wrath. The court stated that as a result of York's threats during the first trial, the son undoubtedly would have refused to cooperate if the government had tried to question him about the threats. The court acknowledged that government could have approached the son and probably could have forced him to testify, presumably by giving him immunity. The court said, however, that it would not infer the existence of a vendetta from what appeared to be a case of prosecutorial restraint. There was nothing in the prosecution's conduct, the court concluded, to support a claim that it was seeking retribution for the successful appeal or to chill other defendants from appealing their convictions.

It is unclear from *York* whether the court determined, based on the circumstances, not to apply a presumption of vindictiveness, or whether it instead implicitly applied such a presumption but determined that the government had rebutted it. One way or the other, however, the practical approach applied in *York* informs this Court's decision regarding how a presumption of vindictiveness, assuming one were to apply, may be rebutted.

18

As suggested by the Court's earlier discussion, as a practical matter the current charges could not have been brought until well after her trial. Based on the record before the Court, the government did not have, prior to the defendant's sentencing or her filing of an appeal, the evidence it needed to make the decision to commit the resources necessary to pursue the current charges. The same practical considerations that the Court has concluded make inappropriate the imposition of a presumption of vindictiveness also point to the conclusion that the government has rebutted such a presumption were one to exist.

### Conclusion

For the reasons stated above, the Court denies defendant's motion to dismiss for vindictive prosecution [docket no. 22].

_____
MATTHEW F. KENNELLY
United States District Judge

Date:   August 15, 2007